IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 20, 2006 Session

**DONNA KAY BRISTER DAVIS**
**v.**
**JOHN W. DAVIS**

An Appeal from the Circuit Court for Shelby County
No. CT-002379-02     Karen R. Williams, Circuit Judge

No. W2005-01304-COA-R3-CV - Filed November 27, 2006

This is a divorce case. After ten years of marriage, the parties separated. Subsequently, their marital home was destroyed in a fire. The husband then executed a quit claim deed on the home to the wife. Consequently, the insurance proceeds on the home were paid to the wife, with none distributed to the husband. Both parties then filed for divorce. During the trial, the husband testified that the wife persuaded him to quit claim his interest in the home to her so that she could deal with the insurance company and sell the land on which the home stood. The husband sought a share of the insurance proceeds and the proceeds from the sale of the land. The wife alleged that the husband quit claimed his interest in the home to her as a gift. At the conclusion of the divorce proceedings, the trial court held, *inter alia*, that the home was a marital asset, despite the existence of the quit claim deed, and granted husband a share of the proceeds from the insurance and the sale of the land. The wife appeals. We affirm, finding that the evidence does not preponderate against the trial court's conclusion that, by executing the quit claim deed the husband did not intend to make a gift of his interest in the property to the wife.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined, and ALAN E. HIGHERS, J., dissented.

Edward M. Bearman, Memphis, Tennessee, for Plaintiff/Appellant Donna Kay Brister Davis.

William Neal Small, Memphis, Tennessee, for Defendant/Appellee John W. Davis.

**OPINION**

Plaintiff/Appellant Donna Kay Brister Davis ("Wife") and Defendant/Appellee John W. Davis ("Husband") were married in Memphis, Tennessee, on January 13, 1992. This was the second marriage for Wife and the third marriage for Husband. The parties had one child together and Wife had a child from her previous marriage. They purchased a home together in Memphis. The parties

separated permanently on their tenth wedding anniversary, January 13, 2002, at which time Husband moved out of the parties' home. He took some of his personal items with him, but left many other items behind.

In February 2002, about a month after the parties separated, a fire broke out at the parties' marital residence. The house was completely destroyed. The home was insured. After the fire, Husband executed a quit claim deed on his interest to the marital home and delivered it to Wife. The parties vehemently dispute the purpose for Husband's execution of the quit claim deed. Wife claims that the deed was signed and delivered to her as a gift from Husband, who was relinquishing to her any interest in the home, land, and proceeds. Husband claims that Wife duped him into signing the quit claim deed based on Wife's representation to him that the deed was necessary for Wife to sell the land and handle the pending insurance claim on behalf of both of them.

On April 26, 2002, Wife filed a complaint for divorce in Shelby County, Tennessee. Wife alleged irreconcilable differences as the ground for divorce. On June 27, 2002, Husband filed a complaint for divorce as well. Husband's complaint alleged that Wife had engaged in inappropriate marital conduct.[1]

On January 31, 2003, Husband filed a petition for contempt against Wife. The petition alleged that Wife had violated the automatic statutory injunction, issued pursuant to Tennessee Code Annotated § 36-4-106, enjoining both parties from transferring, assigning, dissipating, disposing of, or borrowing against marital property without the consent of the other party or the court. *See* T.C.A. § 36-4-106(d)(1)(A). Husband contended that Wife had received the insurance proceeds from the fire and the proceeds from the sale of the land on which the house had stood, but failed to give Husband his share of the proceeds.

A trial was held on the matter from May 3, 2004, to May 5, 2004. At the trial, both parties wanted to be divorced, but differed as to the grounds for the divorce and the circumstances of their separation. Wife testified that the marriage was strained because of Husband's excessive drinking. She said that, on their tenth wedding anniversary, she became frustrated because Husband had again failed to pick his clothes up off the floor, so she picked them up and threw them out the front door. Wife claimed that Husband then cleared out his closet and left.

In contrast, Husband testified that Wife had a volatile nature and was prone to violent outbursts. He testified that, due to her emotional propensities, Wife had previously caused Husband to be jailed for false reasons. He said that he finally left after Wife, in another outburst, threw all of his clothes out of the house. A number of his personal possessions remained in the marital home when it burned down a month after Wife threw him out. The house was a total loss.

---

[1]The parties' divorce petitions were filed in different courts, but were consolidated by order of Judge Karen Williams dated July 11, 2003.

The parties' testimony also conflicted on the reasons for the Husband's execution of a quit claim deed to Wife of his interest in the marital home. Wife testified that, at the time she married Husband, she had already been living in a home on four acres of property, subject to an $85,000 mortgage. Husband moved into that house with Wife. The parties sold that house and, with the proceeds from that sale, purchased the home that eventually burned down.

After the parties' marital home burned down, Wife testified, she had trouble dealing with the insurance adjuster. When she asked for Husband's help, she said, Husband told her that the house was her problem and that he was too busy working to assist her, and he would not answer her calls. She said that Husband told her that he just wanted to be rid of her. She testified that she suggested to Husband that, if he wanted to wash his hands of his family obligations, he could quit claim the house to her and keep his business and equipment. Wife testified that Husband agreed to this arrangement. Consequently, Husband went to attorney Rhea Clift's office, at Wife's urging, and executed the quit claim deed on April 12, 2002. The insurance proceeds totaled $1,014,376.58, and the proceeds from the sale of the lot on which the house was situated totaled $84,999.91. Once the insurance proceeds were paid, she said, Husband signed the checks and Wife deposited them into the parties' joint account. It was undisputed that, by the time of trial, Wife had spent all of the proceeds. Among other things, she purchased a new home listed in her name only, a vehicle for her son from a previous marriage, her son's private school tuition, and computers and various electronic items.

In Husband's testimony, he flatly denied that he signed the quit claim deed as a gift to Wife. He asserted that Wife represented to him that she needed the quit claim deed so that she could handle the fire insurance claim and sell the land on which the house was located. Husband testified that Wife instructed him to go to her attorney's office to execute the document, and he let her handle the insurance claim and the sale of the land. When Husband was not able to get Wife to give him any of the funds from the insurance and the sale of the property, he contacted an attorney and filed for divorce, unaware that Wife had already filed a divorce petition in another court. Husband insisted that he never intended to relinquish any right to his marital share of the proceeds from the insurance or the sale of the land.

On May 4, 2005, the trial court entered a final decree of divorce. In pertinent part, the trial court made the following findings regarding the insurance proceeds from the destruction of the marital home:

> b. <u>Insurance and land proceeds</u>: During the course of the marriage, Wife sold the home she brought into the marriage, paid off her existing loan and co-mingled the proceeds with Husband's funds or joint income to purchase the family home. On or about January 13, 2002, Husband moved out of the family home. On February 22, 2002, prior to either party filing for divorce, this home, with all of its contents, was destroyed by fire. An insurance claim was filed. Wife persuaded Husband to quit claim the home to her on April 12, 2002. Two weeks later she filed for divorce. Husband alleges that Wife said that she needed the quit claim deed so that she could

-3-

sell the property. Wife takes the position that she was to get all of the insurance proceeds and the proceeds from the sale of the land and Husband was to get his business. The Court finds that this Quit Claim deed was executed as part of a scheme to deprive Husband of his marital interest in the home and the contents. Eventually, approximately $1.1 million in proceeds were received by Wife. Although this value is probably lower than a fair market value, the Court accepts the total insurance proceeds as the value of the home and contents. The Court finds that the home and its contents were a marital asset.

Thus, the trial court credited Husband's testimony and held that Husband's execution of the quit claim deed was not a gift to Wife, but rather was a result of Wife's "scheme" to deprive Husband of his property. After deducting the amounts used to pay off the parties' first and second mortgages on the home, an IRS lien on the home, homeowner's insurance, and various taxes, the trial court awarded each party a 50% interest in the balance. Each party's share of the marital home was $343,368.12. Ultimately, considering a number of other assets not relevant to this appeal, the trial court awarded Husband $270,000 as his share of the marital estate. To secure the debt, the trial court issued a lien in favor of Husband against Wife's current home. The trial court concluded that Wife had, "in an attempt to prevent Husband from receiving his share of the marital estate, converted all of the liquid assets from the insurance claim and the sale of the land into realty and personalty prior to the trial in this matter." The trial court also found in favor of Husband on his contempt petition, concluding that Wife had violated the trial court's standing orders. Consequently, the trial court ordered Wife to pay the court costs. From this order, Wife now appeals.

The only issue Wife raises on appeal is whether the trial court erred in finding that the marital home remained a marital asset after Husband quit claimed his interest to her. Wife does not dispute that the marital home was marital property at the time it was purchased and throughout the time the parties both resided there. Rather, Wife argues that Husband's execution of the quit claim deed was a gift of marital property from one spouse to the other, and that consequently the house was Wife's separate property. Husband disputes the existence of a valid gift, arguing that the trial court correctly found that he executed the quit claim deed not as a gift, but as a result of Wife's scheme to retain for herself all of the insurance and sale proceeds paid on the house.

On appeal, the trial court's factual findings are reviewed *de novo* on the record, subject to a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's legal conclusions are reviewed *de novo* and are not entitled to any presumption of correctness. *See, e.g., Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). As to the trial court's findings on the credibility of the witnesses, the trial court is specially qualified to evaluate the credibility of witnesses by virtue of its ability to observe the demeanor of the witnesses as they testify. *Id*. As a consequence, trial courts are accorded significant deference in resolving factual disputes when the credibility of the witnesses is of paramount importance. *Id*.; *see ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 24 (Tenn. Ct. App. 2005). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells*, 9 S.W.3d at 783 (citing *Humphrey v. David*

-4-

***Witherspoon, Inc.***, 734 S.W.2d 315, 315-16 (Tenn. 1987); ***Bingham v. Dyersburg Fabrics Co., Inc.***, 567 S.W.2d 169, 170 (Tenn. 1978)).

In considering the property division during a divorce proceeding, the trial court must first classify the property as either separate or marital. ***Batson v. Batson***, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988). Property classified as "marital property" is then subject to an equitable division, while separate property is not. ***Id***. The manner of acquisition or disposition can affect the classification of the property. For instance, Tennessee courts have construed the distribution of martial property statute, Tennessee Code Annotated § 36-4-121(b)(2), "to mean that gifts by one spouse to another of property that would otherwise be classified as marital property are the separate property of the recipient spouse." ***Batson***, 769 S.W.2d at 856. In the instant case, Wife readily admits that, absent the existence of the quit claim deed, the marital home would be classified as marital property. Wife argues, however, that Husband's execution of the quit claim deed converted the marital home from marital property to Wife's separate property. Accordingly, the operative question in the instant case becomes whether Husband's execution of the quit claim deed was a gift.

The burden of proving a gift is normally on the donee. ***Pamplin v. Satterfield***, 265 S.W.2d 886, 888 (Tenn. 1954). However, a conveyance of property from one spouse to another creates the rebuttable presumption of a gift. ***Denton v. Denton***, 33 S.W.3d 229, 232 (Tenn. Ct. App. 2000); ***Turner v. Turner***, No. M1999-00482-COA-R3-CV, 2000 WL 1425285, at *7 (Tenn. Ct. App. Sept. 28, 2000). In Tennessee, two elements must be present for a court to find that a valid gift has been made: (1) an intention by the donor to make a present gift; and (2) delivery of the gift, relinquishing the donor's control and dominion over the property. ***Lowry v. Lowry***, 541 S.W.2d 128, 130 (Tenn. 1976); ***Dunlap v. Dunlap***, 996 S.W.2d 803, 815 (Tenn. Ct. App. 1998). Thus, to overcome the presumption of a gift, Husband was required to prove that one of these elements was not present.

In this case, the trial court recited the parties' conflicting testimony on the circumstances surrounding the execution of the quit claim deed. Clearly the trial court credited Husband's testimony that Wife misrepresented to Husband that execution of the quit claim deed to her was necessary for her to be able to "take care of" the insurance claim and the sale of the land on which the marital home was situated. It also credited Husband's unambiguous denial of any intent to make a gift to Wife of his interest in the proceeds from the insurance claim or the sale of the land. The trial court concluded that Husband executed the quit claim deed not as a gift, but as part of Wife's "scheme to deprive Husband of his marital interest in the home and the contents." In our review of the appellate record, we see no reason to question the trial court's assessment of the parties' relative credibility. Under these circumstances, the evidence fully supports the trial court's implicit finding that, in executing the quit claim deed, Husband did not have the intent to make a gift to Wife of his marital interest in the proceeds from either the insurance claim or the sale of the land on which the marital home stood. Thus, we affirm the trial court's division of the property.

Finally, Husband requests an award of attorney's fees and expenses for defending this appeal. This motion is denied.

The decision of the trial court is affirmed. The costs of this appeal are hereby taxed against Plaintiff/Appellant Donna Kay Brister Davis, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE