IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 21, 2022 Session

## RAQUEL AGUSTIN MITCHELL v. TONEY R. MITCHELL

**Appeal from the Chancery Court for Bradley County**
**No.    2020-CV-5    Jerri S. Bryant, Chancellor**
_____

**No. E2021-01283-COA-R3-CV**
_____

This post-divorce appeal concerns the trial court's entry of a permanent parenting plan, calculation of child support, and classification of assets.  We affirm the court's decisions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and ARNOLD B. GOLDIN, JJ., joined.

Jeff Andrew Miller, Cleveland, Tennessee, for the appellant, Toney R. Mitchell.

Mark Randall Sellers, Cleveland, Tennessee, for the appellee, Raquel Agustin Mitchell.

## OPINION
## I.  BACKGROUND

Raquel Agustin Mitchell ("Wife") and Toney R. Mitchell ("Husband") met via an online dating website.  Wife lived in the Philippines at the time but later moved to the United States and married Husband in 2004.  The parties lived together in Cleveland, Tennessee.  Three children were born of the marriage, in 2005, 2007, and 2015 (collectively "the Children").  Husband worked throughout the marriage, while Wife cared for the Children and ran her own business from home.  Wife later obtained employment outside of the home.

On January 8, 2020, Wife filed a complaint for divorce, alleging inappropriate marital conduct and irreconcilable differences. Wife requested designation as the primary residential parent, alimony, and an equitable property division. Husband filed an answer and counter-complaint. The case proceeded to a hearing on June 9, 2021, where the parties were the only witnesses.

Wife admitted infidelity, citing a lack of intimacy in the marriage. She claimed that the parties were only intimate for the purpose of conception of the Children. She further cited Husband's anger and behavior toward her as another source of contention. She claimed that he expected her to maintain the home to a certain standard, which made her feel like a slave. He also spoke to her in anger, at one time telling her he would like to ship her back to the Philippines and another time telling her that he wished she would die.

Relative to the Children, Wife stated that she was the primary caretaker and that Husband, on at least two occasions, failed to wake up in time to either take a child to school or pick one up from school. She noted that he worked the night shift throughout the marriage. He also advised her that he was a "night shift person" in general and preferred to sleep during the day and stay up late at night. She asserted that he cut his hours since she filed her complaint for divorce. She claimed that he worked 55-60 hours per week prior to the filing but now only works 36 hours per week and only on the weekends.

Husband admitted that he now works 36 hours per week, consisting of three 12-hour shifts, starting on Friday and going through the weekend from 7 p.m. through 7 a.m. He stated that he drives approximately one hour to work but that he is able to leave at 7 p.m. and arrive at 7 p.m. due to his crossing of a time zone. However, he does not return home from work until after 9 a.m. and then usually sleeps until late afternoon, e.g. around 4 p.m. He claimed that he changed his schedule to secure more family time and because he felt he was working too hard. He admitted that he overslept on occasion, citing his use of a prescribed blood pressure medication as the cause for his sleepiness.

Husband denied Wife's testimony concerning his outbursts but later stated that his statements were likely made in anger and never in front of the children if he ever actually said anything like Wife claimed. He agreed that their marriage suffered from a lack of intimacy but claimed that he was "blindsided" by Wife's complaint for divorce, stating that he knew they had problems but that he did not realize she was contemplating separation.

Husband claimed that he opened a Roth IRA prior to the marriage and then rolled the amount over into a new account during the marriage. He maintained that neither party contributed to the account during the marriage and asserted that the account should be deemed separate property. He did not provide any documentation in support of his assertions. The only documents submitted established that the money was moved to a new account during the marriage.

- 2 -

By order entered October 1, 2021, the trial court found that both parties had committed grounds for divorce. The court found Wife was a credible witness and further found that Husband's credibility had been impeached. In its division of marital property, the court found that the Roth IRA was a marital asset based upon Husband's failure to prove that it was separate property. The court made specific findings of fact as to the permanent parenting plan and entered its own plan naming Wife as the primary residential parent. The court awarded Husband 100 days of co-parenting time, occurring on Tuesday, Wednesday, and Thursday afternoons during the school year and overnight on Tuesdays and Wednesdays during Summer. This timely appeal followed.

## II. ISSUES

Husband raises a number of issues on appeal that we consolidate and restate as follows:

A.     Whether the trial court erred in its findings regarding Husband's credibility and then resolving all disputed issues of fact in Wife's favor.

B.     Whether the trial court erred in entering a parenting plan that did not provide for equal parenting time.

C.     Whether the trial court erred in finding that Husband cut his work hours to avoid child support and is willfully underemployed.

D.     Whether the trial court erred in finding that the Edward Jones Roth IRA was marital property.

## III.  STANDARD OF REVIEW

In non-jury cases such as this one, we review the trial court's factual findings de novo upon the record, affording them a presumption of correctness unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review questions of law de novo, affording the trial court's decision no presumption of correctness. *Armbrister*, 414 S.W.3d at 692 (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

# IV. DISCUSSION

## A.

Husband first takes issue with the trial court's credibility findings, claiming that such findings were erroneously based on alternative pleadings and statements that were either not made, made prior to the marriage, or misconstrued. The weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court because trial courts are in a far better position than this court to observe the demeanor of the witnesses. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). We will not re-evaluate a trial court's credibility determinations "'absent clear and convincing evidence to the contrary.'" *Davis v. Davis*, 223 S.W.3d 233, 238 (Tenn. Ct. App. 2006) (citing *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)). We are disinclined to disturb the trial court's finding here when the record supports the court's determination.

## B.

Husband next takes issue with the trial court's permanent parenting plan. Trial courts have "broad discretion in formulating parenting plans" because they "are in a better position to observe the witnesses and assess their credibility." *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017) (citing *Armbrister*, 414 S.W.3d at 693). "A trial court's broad discretion on custody matters extends to the question of which parent should be named primary residential parent." *Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019). On appeal, we review a trial court's decision regarding the details of a residential parenting schedule for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Armbrister*, 414 S.W.3d at 693 (quoting *Eldridge*, 42 S.W.3d at 88).

Husband objects to the court's failure to provide equal co-parenting time, absent a finding of harm to the Children. He suggests that his denial of equal time with the Children was a violation of his fundamental right to parent.[1] In setting the residential schedule, the trial court is directed to conduct the following analysis:

---

[1] In his reply brief, Husband clarified that he does not question the constitutionality of the statutes but was rather suggesting that the statutes contemplate equal time, absent a finding requiring otherwise.

- 4 -

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child.  In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors.  The court shall consider all relevant factors, including the following, where applicable:

(1)      The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)      Each parent's past and potential for future performance of parenting responsibilities[;]

(3)      Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)      The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)      The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)      The love, affection, and emotional ties existing between each parent and the child;

(7)      The emotional needs and developmental level of the child;

(8)      The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child;

(9)      The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)   Evidence of physical or emotional abuse to the child, to the other parent or to any other person.  The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)   The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)   The reasonable preference of the child if twelve (12) years of age or older . . .;

(14)   Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a)(1)–(15) (emphasis added).[2]   Although the court was obligated to consider the applicable statutory factors, "the statute does not require a trial court, when issuing a memorandum opinion or final judgment, to list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination." *Burnett v. Burnett*, No. E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 (Tenn. Ct. App. July 23, 2003).

Despite Husband's claim to the contrary, "neither a preference nor a presumption for or against [joint legal custody] is established" by the pertinent statutes.  Tenn. Code Ann. § 36-6-101(a)(2)(A).  The legislature has provided that "the court shall have the widest discretion to order a custody arrangement that is in the best interest of the child." Tenn. Code Ann. § 36-6-106(a)(2)(A).  "Courts have generally looked upon awards of 'joint custody' with disfavor, believing that such arrangements rarely promote the best interests of the child." *In re Emma E.*, No. M2008-02212-COA-R3-JV, 2010 WL565630, at *6 (Tenn. Ct. App. Feb. 17, 2010).  Such equal co-parenting arrangements "should only be ordered when there is specific, direct proof that the child's interest will be served." *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL1684050, at *8 (Tenn. Ct. App. July 19, 2005) (internal citations omitted).  Instead, the focus of the best interest analysis is upon allowing the parents to enjoy the maximum participation possible in the life of the child in accordance with such child's best interest.

It is clear from the record before us that the court considered the Children's best interest and fashioned a plan that would permit each parent's maximum participation in

---

[2] Effective March 18, 2022, the General Assembly has amended Tennessee Code Annotated § 36-6-106(a) by adding a new subdivision for the court's consideration, requiring the court to consider 16 factors.  *See* 2022 Tenn. Pub. Acts, Ch. 671 § 1 (H.B. 1866).  However, because the petition in this case was filed before the effective date of the amendment, the statutory best interest factors provided in the prior version of the statute apply here. *See, e.g.*, *In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

their lives. Our review confirms that Wife was the primary caretaker of the Children throughout the marriage and that Husband's participation would best be described as "sleepy." He worked the night shift throughout the marriage and slept most of the day upon his return, causing his inability to meaningfully participate on a daily basis. While Husband has changed his work schedule during the pendency of these proceedings, the trial court found that this was accomplished to reduce his support obligation, not to spend more time with the Children. Husband now sleeps during the day when the Children are most available, e.g., the weekends. The plan fashioned by the court allows Husband specific time with the Children during the week that will not interfere with their schooling and his work schedule. We affirm the trial court's permanent parenting plan decision.

### C.

Husband next asserts that his child support obligation should be based upon his current income and not the trial court's imputed income. He argues that the trial court erred in finding that he was voluntarily underemployed when he testified that he changed his work schedule to secure more family time and rest for himself.

The setting of child support is a discretionary matter we review using the deferential "abuse of discretion" standard of review. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A). The Guidelines provide that a court may impute income "[i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2).

Here, the trial court discredited Husband's explanation that he cut his hours to spend more time with the Children as evidenced by the fact that he now works on the weekends and sleeps during the day when the Children are most available. We agree with the trial court's assessment and correspondingly affirm the court's calculation of support based upon Husband's underemployment.

### D.

Lastly, Husband claims that the court erred in designating the Roth IRA as marital property because he had a distinct recollection of the circumstances surrounding its opening prior to the marriage and subsequent transfer in 2009. Wife responds that the court did not err when Husband failed to present proof supporting his designation of the account as separate property. She further asserts that this issue is waived as a result of his failure

to include a property table in accordance with Rule 7 of the Rules of the Court of Appeals.[3] Husband responds that his failure to provide a table is of no consequence when his dispute concerns one single item classified by the trial court as marital property.

In the event of further appellate review, we will address the issue regardless of any potential for waiver as a result of Husband's failure to comply with Rule 7. Marital property, generally, is "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b)(1)(A). Separate property is defined in part as "all real and personal property owned by a spouse before marriage, including, but not limited to . . . property acquired by a spouse at any time by gift, bequest, devise or descent[.]" Tenn. Code Ann. § 36-4-121(b)(2). The trial court's classification of property is a finding of fact, which we presume to be correct unless the evidence preponderates otherwise. *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007).

The only documentation presented before the trial court on this issue included a beneficiary designation signed in 2009 and tax forms from 2019, both of which are documents that originated during the marriage. Wife asserted at trial and now on appeal that the property is marital as evidenced by the forms she presented. Without an originating statement, we, like the trial court, are unable to classify the property as separate property as argued by Husband. *See id.*, 241 S.W.3d at 485-86 (providing that the person asserting that an asset acquired during the marriage is separate property has the burden of establishing such by a preponderance of the evidence).

## V. CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Toney R. Mitchell.

_____
JOHN W. MCCLARTY, JUDGE

---

[3] "(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts."