IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 6, 2024 Session

## DELVON PADEN v. KYRSTYEN DAVISON

**Appeal from the Juvenile Court for Montgomery County**
**No. 2013-JV-1235      Timothy K. Barnes, Judge**

_____

### No. M2023-00240-COA-R3-JV

_____

The trial court entered a permanent parenting plan in 2014 that governed the parties' custody arrangement for nine years. In 2022, the child's father petitioned the juvenile court for a modification of the parenting plan. During the pendency of the modification petition, he also filed a motion for a restraining order to prevent the child's mother from removing the parties' daughter from his custody, which was granted. After a hearing on the modification petition, the court found a material change in circumstances had occurred warranting modification and that modification of the custody arrangement was in the child's best interest. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JEFFREY USMAN, J., joined.

Alexa Marie Spata, Clarksville, Tennessee, for the appellant, Kyrstyen Davison.

Delvon Paden, Fayetteville, North Carolina, pro se.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Delvon Paden ("Father") and Kyrstyen Davison ("Mother") dated but never married, and they have one minor child from the relationship. In 2014, a permanent parenting plan (the "2014 PPP") was entered by the Juvenile Court for Montgomery County, designating Mother the primary residential parent and providing Father parenting time one weekend per month to be exercised in Tennessee.[1] The 2014 PPP also provided

_____

[1] At the time of the permanent parenting plan's adoption, and at the time of trial, Father lived in North Carolina.

that Mother and Father would alternate parenting time during the child's school vacations and that Father would have four weeks of parenting time in the summer. For custody exchanges, the 2014 PPP required the parties to meet at an agreed-upon location between their residences. It also gave Mother decision-making authority over the child's education, health care, and religious upbringing. Father was given joint decision-making authority with Mother over the child's extracurricular activities. Father was also ordered to begin paying Mother child support monthly.

On April 25, 2022, Father petitioned the court for modification of the 2014 PPP, and requested the court to have Mother show cause why she should not be held in contempt. Father alleged as a basis for his petition that Mother had prevented him from exercising his visitation during the child's spring and fall breaks from school, that Mother refused to meet with him at the agreed-upon halfway point to exchange the child, and that Mother had moved residences more than fifty miles without telling Father. Father further alleged that Mother failed to tell him about the child's recent autism diagnosis, failed to list Father as the child's father on any educational or medical records, and failed to facilitate the relationship between Father and the child.

On June 23, 2022, during Father's parenting time, Father filed a motion for a restraining order in juvenile court, asking the court to prevent Mother from removing the minor child from the care, custody, and control of Father pending further orders of the court. As a basis for this motion, Father alleged that the child had brought a phone with her to his residence and that Father had seen text messages between Mother and the child showing that Mother had been regularly leaving the child alone to care for other children. The court entered an order granting an ex parte restraining order the same day, giving Father temporary custody of the child. On July 6, 2022, after a hearing on the motion, the restraining order was extended pending further orders of the court.

On July 29, 2022, Mother responded by filing a motion for the child to be returned to her custody. The court denied the motion without a hearing and without a written order. Mother then filed a motion for temporary visitation on August 26, 2022. The court entered an order on September 28, 2022, allowing Mother parenting time with the child one weekend per month in North Carolina. The court also allowed Mother parenting time with the child in Tennessee during the Thanksgiving holiday.

On December 21, 2022, the court conducted a final hearing on Father's petition to modify the 2014 PPP. In its order, the court stated that it did not find Mother's testimony credible regarding changes to her behavior since Father was granted temporary custody in June 2022. The court also found that the child had been left alone to care for her younger sibling, that Mother had not kept Father informed of the child's medical conditions, and that Mother had shown an unwillingness to recognize Father as a parent by signing the child up for an extracurricular activity under Mother's married name instead of Father's surname. The court also found that Mother had failed to meet Father at the halfway point

for exchanging the child and that Mother had shown a general unwillingness to co-parent with Father. Regarding Father, the court found that he was willing to co-parent with Mother. The court went on to find that a material change in circumstances had occurred warranting a modification of the plan. It also found that a modification of the plan was in the best interests of the child. The trial court entered a new parenting plan (the "2022 PPP") designating Father the primary residential parent and giving him significantly more parenting time than Mother.

Mother timely appealed, presenting the following issues for our review, which we have restated slightly: (1) whether the trial court properly granted Father's motion for a restraining order; (2) whether the trial court erred when finding a material change in circumstances had occurred and designating Father as the primary residential parent; and (3) whether the trial court erred when it failed to address and make specific findings of fact as to the best interest of the child factors.

STANDARD OF REVIEW

In a non-jury case like this one, we review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's conclusions of law de novo, with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

Whether a material change in circumstances has occurred and whether modification of a parenting plan is in the child's best interests are factual questions. *Id.* We therefore presume the trial court's findings on these matters are correct and will not overturn them absent evidence that preponderates against them. *Id.* at 693 (citing TENN. R. APP. P. 13(d); *In re C.K.G.*, 173 S.W.3d 714, 732 (Tenn. 2005); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984)). Because trial courts are able to directly observe the demeanor of the witnesses as they testify, trial courts are best situated to evaluate a witness's credibility. *In re T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046, at *9 (Tenn. Ct. App. Feb. 12, 2014). "Consequently, we accord particular deference to the trial court's findings of fact that are based on its assessment of the credibility of the witnesses." *Id.* (citing *Davis v. Davis*, 223 S.W.3d 233, 238 (Tenn. Ct. App. 2006)). Absent clear and convincing evidence to the contrary, we will not re-evaluate a trial court's credibility assessments. *Id.* (citing *Wells v. Tenn. Bd. Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)).

Trial courts have broad discretion in formulating parenting plans. *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 495 (Tenn. 2017). An appellate court will not overturn a trial court's ruling formulating a parenting plan merely because reasonable minds might reach a different decision. *Id.* "It is not the function of appellate courts to tweak [a residential schedule] in the hopes of achieving a more reasonable result than the trial court." *Eldridge*

- 3 -

*v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). Determining the details of a parenting plan falls squarely within the trial court's discretion. *Armbrister*, 414 S.W.3d at 693. We therefore review a trial court's decision regarding parenting schedules under the abuse of discretion standard. *Id.* "'An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *Id.* (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)). With regard to establishing a residential parenting schedule, a trial court abuses its discretion when its ruling falls outside the range of rulings that "might reasonably result from an application of the correct legal standards to the evidence." *Armbrister*, 414 S.W.3d at 693.

ANALYSIS

I.       Mother's challenge to the restraining order

On appeal, Mother first challenges the trial court's entry of a restraining order preventing her from removing the child from the care and custody of Father and granting Father temporary custody of the child pending further orders of the court. For the reasons stated below, we find that any challenge to this restraining order is moot.

Under the justiciability doctrine of mootness, a case must remain a legal controversy through the entirety of the proceedings, that is, "from the time it is filed until the moment of final appellate disposition." *Norma Faye Pyles Lynch Fam. Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203-04 (Tenn. 2009). Cases may become moot through a "court decision, acts of the parties, or some other reason occurring after commencement of the case." *Id.* at 204. "A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Id.* Thus, a case can become moot if it seeks a judgment that, when rendered, will not have any practical legal effect on an existing controversy. *Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *7 (Tenn. Ct. App. Nov. 25, 2015) (citing *Boyce v. Williams*, 389 S.W.2d 272, 277 (Tenn. 1965)). There are, however, exceptions to the mootness doctrine. Courts may refrain from finding an appeal as moot when "collateral consequences remain following the dismissal of the appeal." *Hudson v. Hudson*, 328 S.W.3d 863, 365 (Tenn. 2010). "This exception applies to prejudicial collateral consequences." *Id.* at 866. An example of a prejudicial collateral consequence is "the continued effect of an order that has expired or is invalid." *Id.* at 866. Determining whether a case is moot is a question of law. *Cisneros*, 2015 WL 7720274, at *7.

The restraining order entered in this case granted Father custody of the child pending further orders of the court. Later in the case, the court entered the 2022 PPP modifying the parenting plan. The 2022 PPP, not the restraining order, then governed the custody arrangement. Thus, if we were to reverse the court's entry of the restraining order, our decision would have no practical affect because Father would continue to retain custody of

the child under the 2022 PPP, making any controversy surrounding the entry of the restraining order moot.[2] The restraining order also fails to fit into the exception given above because we cannot find any prejudicial collateral consequences stemming from the entry of this order.[3] This issue is, therefore, moot.

## II.     Modification of the custody arrangement

Before addressing the next issue raised by Mother, we note that our review in this case is hampered by the trial court's failure to adequately comply with Tenn. R. Civ. P. 52.01, which states that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." We have previously stated that "findings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations 'often hinge on subtle factors, including the parents' demeanor and credibility during [the] proceedings.'" *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (quoting *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010)). To facilitate appropriate appellate review, trial courts should be "as precise as possible" when making custody findings.[4] *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011).

When a trial court has made insufficient findings of fact in a written order, appellate courts generally have two options. *Skowronski v. Wade*, No. M2014-01501-COA-R3-CV, 2015 WL 6509296, at *6 (Tenn. Ct. App. Oct. 27, 2015). The first option is to vacate the trial court's decision and remand the case to the trial court to make specific findings of fact. *Id.* The second option is "to conduct 'a de novo review of the record to see where the preponderance of the evidence lies.'" *Id.* (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013)). The most appropriate option "depends on the particular circumstances of the case, including the adequacy of the record, the fact-intensive nature of the case, and

---

[2] Mother asserts in her brief that the court violated Tenn. Code Ann. § 36-6-405(b) by modifying the existing residential schedule prior to the final hearing without making a finding that the child would be subject to a likelihood of substantial harm. Even if we were to accept Mother's argument, it would not change our mootness determination because it does not negate the fact that Father still retains custody of the child under the 2022 PPP.

[3] Mother also asserts in this section of her brief that the court violated Tenn. Code Ann. § 36-6-406(e) by assuming the ruling on the restraining order was correct and adopting a similar custody arrangement into the final order modifying the custody arrangement. However, this section of the code states that "the court shall not draw any presumptions from the provisions of the temporary parenting plan." Tenn. Code Ann. § 36-6-406(e). There was no temporary parenting plan entered in this case and, therefore, nothing from which to draw a presumption.

[4] Trial judges "are not required to articulate every factor and its application to the facts at issue." *In re Elaina M.*, 2011 WL 5071901, at *8.

whether witness credibility determinations must be made." *Id.* We will undergo this analysis at each juncture where insufficient findings have been made. We now turn to Mother's challenges to the trial court's order.

### A.  Material change in circumstances

Mother challenges the trial court's determination that a material change in circumstances occurred warranting a modification of the custody arrangement. Child custody is a statutory term that courts have equated to the designation of a "primary residential parent." *Armbrister*, 414 S.W.3d at 703. When considering whether the child custody should be modified, the threshold question is whether a material change in circumstances has occurred since the entry of the existing parenting plan. *Killian v. Moore*, No. M2020-01283-COA-R3-CV, 2022 WL 457395, at *7 (Tenn. Ct. App. Feb. 15, 2022).

A determination of whether a material change in circumstances has occurred depends on whether a parent is seeking to modify custody or to modify the residential parenting schedule. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). In particular, modification of custody requires a higher threshold than that required for modification of a residential schedule. *Hawk v. Hawk*, No. E2015-0133-COA-R3-CV, 2016 WL 901518, at *9 (Tenn. Ct. App. Mar. 9, 2016). The section of the statute applicable in this case provides that:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). Not every change in circumstances constitutes a material change. Rather, "'[t]he change must be significant before it will be considered material.'" *Gentile v. Gentile*, No. M2014-01356-COA-R3-CV, 2015 WL 8482047, at *5 (Tenn. Ct. App. Dec. 9, 2015) (quoting *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007)). There is no bright-line test for courts to use when determining whether a material change in circumstances has occurred. *McClain v. McClain*, 539 S.W.3d 170, 188 (Tenn. Ct. App. 2017). But, courts consider the following principles in making this determination:

> "First, the change of circumstances must involve either the child's circumstances or a parent's circumstances that affect the child's well-being. Second, the changed circumstances must have arisen after the entry of the custody order sought to be modified. Third, the changed circumstances must not have been reasonably anticipated when the underlying decree was

entered. Fourth, the change in circumstances must affect the child's well-being in some material way."

*Canzoneri v. Burns*, No. M2020-01109-COA-R3-CV, 2021 WL 3399860, at *6 (Tenn. Ct. App. Aug. 4, 2021) (quoting *McClain*, 539 S.W.3d at 188) (citation omitted).

Although the trial court found that there had been a material change in circumstances, the court failed to expressly state what constituted the material change in circumstances. From the factual findings given, it is clear from the final order, however, that the trial court considered the material change in circumstances to be Mother's failure to co-parent and her unwillingness to facilitate a relationship between the child and Father. The evidence in the record before us does not preponderate against this finding. Mother did not assist Father in ensuring the child had adequate health insurance, failed to meet Father at the halfway point for visitation exchanges, and signed the child up for afterschool care under Mother's new married name instead of Father's name. Through these actions, Mother failed to adhere to the 2014 PPP in a manner that affected the child's wellbeing.

In support of her argument, Mother cites to competing witness testimony that the court found not to be probative of why Mother left the minor child alone. The court also found Mother was not a credible witness. Mother has failed to point to evidence meeting the clear and convincing evidence standard required to overturn the court's findings on witness credibility. We accord great deference to the trial court's credibility findings and conclude that the evidence does not preponderate against the trial court's finding that there had been a material change in circumstances.

B.  Best interest of the child

Mother next argues that the trial court erred when it failed to make specific findings regarding each of the best interest factors. After finding a material change in circumstances, the trial court next must evaluate whether a modification is in the best interests of the child. *In re Elaina M.*, 2011 WL 5071901, at *8. When making this determination, the custody statute requires that the court "shall consider all relevant factors" and lists the factors that should be considered. Tenn. Code Ann. § 36-6-106(a). "The word 'shall' places a mandatory duty on trial courts to consider these factors." *In re Elaina M.*, 2011 WL 5071901, at *8.

A thorough review of the trial court's final order shows that Mother is correct that the court failed to make specific findings supporting its best interest decision. The only mention of the best interest factors in the final order is the following: "[t]he court has also considered the factors in Tennessee Code Annotated § 36-6-106 and finds the attached parenting plan is in the best interests of the minor child." This alone does not satisfy Tenn. R. Civ. P. 52.01. *See Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012) ("Simply stating the trial court's decision,

without more, does not fulfill this mandate."). Although the trial court stated that it had considered the best interest factors, it failed to make any specific findings as to the statutory factors. We are therefore unable to determine how the court made this determination. Though not required to enumerate every factor considered, the trial court must undertake a best interest analysis to determine which parent is comparatively more fit. *In re Elaina M.*, 2011 WL 5071901, at *8. Because the trial court failed to make adequate best interest findings, we have two options: remanding the case back to the trial court to make specific findings or conducting our own review de novo. *See Lovlace*, 418 S.W.3d at 36. In this instance, we believe it is best to conduct our own best interest analysis to determine whether the modification was in the child's best interest because the record is adequate, the trial court addressed the necessary facts, and the trial court made adequate credibility findings.

The first best interest factor considers "[t]he strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child[.]" Tenn. Code Ann. § 36-6-106(a)(1). This factor does not weigh in favor of either parent. From the record, the child appears to have a stable relationship with both parents, and both parents have at times taken care of the child's daily needs.

Factor 2 directs us to consider the following:

Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order[.]

*Id.* § 36-6-106(a)(2). From our review of the record, Mother failed to adequately inform Father about the child's medical condition including the child's seizure, autism diagnosis, and orthotics despite repeated requests from Father for such information. Mother also denied Father, despite his requests, important medical insurance information and information about the child's education. Father testified that Mother moved the child without informing him and registered the child for afterschool care under Mother's married name instead of Father's surname. Based upon the text messages presented to the court, Mother also regularly left the child alone to care for a younger stepsibling. Although Mother testified that she did not do this, the trial court found Mother not credible. Thus,

we conclude that Mother left the child alone on numerous occasions. This factor weighs in favor of Father.

Factor 3 provides that "[r]efusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings[.]" *Id.* § 36-6-106(a)(3). Mother attended a parenting class in accordance with the trial court's directive. This factor is therefore not applicable to this case.

Factor 4 concerns "[t]he disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care[.]" *Id.* § 36-6-106(a)(4). Father testified regarding his concerns about Mother's failure to adequately address the child's medical conditions by securing appropriate treatment and by undermining the child's continuity of care while she was in his custody as a result of Mother's unwillingness to communicate critical information to him about the child's medical condition and insurance. For example, the child experienced a seizure resulting in hospitalization, which Mother had not promptly informed Father about; nevertheless, Mother provided no testimony about following up as to medical treatment or care for the child related to seizures. Alternatively, Father testified as to arranging for an EEG, which discovered a seizure related abnormality, and beginning drug treatment that would require medical follow ups. This factor favors Father.

Factor 5 addresses "[t]he degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities[.]" *Id.* § 36-6-106(a)(5). For the majority of the child's life, Mother was her primary caregiver. Although this role shifted from Mother to Father during the course of these proceedings, this factor still weighs in favor of Mother.

The next two factors are neutral as to each parent: "The love, affection, and emotional ties existing between each parent and the child;" "The emotional needs and developmental level of the child[.]" *Id.* § 36-6-106(a)(6), (7). Based upon the testimony of both parents, the child appears to love both parents and have emotional ties with each of them. The child's emotional needs and developmental level do not favor either parent.

Factor 8 concerns "[t]he moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . [.]" *Id.* § 36-6-106(a)(8). Mother's unwillingness to provide important medical information to Father in relation to the child's medical condition and insurance undermined Father's ability to care for, insure, and properly address the child's medical needs. Mother's lack of cooperation with Father for no clear reason to the detriment of the child reflects negatively upon mother's emotional fitness in the parenting of the child. Additionally, Mother's repeatedly leaving the child

alone to care for her younger stepsibling also reflects poorly on Mother's emotional fitness to care for the child.[5] This factor favors Father.

We next consider Factor 9, which concerns "[t]he child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities[.]" *Id.* § 36-6-106(a)(9). Father testified that the child had grown to know Father's family and had integrated well into her new community in North Carolina. She had a good relationship with her step-siblings living in Father's household. Father enrolled the child in a new school in North Carolina, and her grades had regressed at her new school. Mother testified that the child had previously been integrated into Mother's large support network in Tennessee. Furthermore, the child's academic performance was better at her school in Tennessee. This factor slightly favors Mother.

Factor 10 regards "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment[.]" *Id.* § 36-6-106(a)(10). From the record, we can say that Father has provided a stable, satisfactory environment for almost two years at this point in the case. While the child had previously been with Mother, due to the court's finding that Mother regularly left the child alone and the uncertainty surrounding Mother's husband's supervision of the child, it is unclear whether this was a stable, satisfactory environment. This factor favors Father.

None of the next three factors are applicable to this case: "Evidence of physical or emotional abuse to the child, to the other parent or to any other person. . .;" "The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;" "The reasonable preference of the child if twelve (12) years of age or older . . .[.]" *Id.* § 36-6-106(a)(11)-(13).

Finally, we consider Factor 14, which pertains to "[e]ach parent's employment schedule, and the court may make accommodations consistent with those schedules[.]" *Id.* § 36-6-106(a)(14). Father's work schedule changes and sometimes requires him to work at odd hours. Mother works at an afterschool program where she works regular business hours which are more in line with the child's schedule. This factor favors Mother.

---

[5] At the conclusion of the hearing, the court stated as follows:

> The mother testified that: "She's my best friend. I learn from her." Well, that may be the problem. She's not your best friend. She's your daughter. You're the one who gives instruction.

We agree with the court.

Based on the foregoing, we conclude that the trial court did not err in concluding that modification was in the child's best interest. Therefore, we affirm the judgment of the trial court.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Kyrstyen Davison, for which execution may issue if necessary.

/s/ Andy D. Bennett<br>
ANDY D. BENNETT, JUDGE