IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 25, 2026 Session

## CLAUDE R. ELLIS v. MELISA JANE GODFREY ELLIS

**Appeal from the Chancery Court for Bradley County**
**No. 2011-CV-148      Jerri Bryant, Chancellor**

————————————————————————

**No. E2024-01735-COA-R3-CV**

————————————————————————

This is a long-running divorce case on appeal to this Court for the third time. The husband raises several issues concerning the trial court's classification of the parties' interests and award of attorney's fees to the wife. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, P.J., E.S., and D. KELLY THOMAS, JR., SP.J., joined.

Donald Capparella and Jacob A. Vanzin, Nashville, Tennessee, for the appellant, Claude R. Ellis.

Daniel A. Herrera and Sarah Emily Still, Knoxville, Tennessee, for the appellee, Melisa Jane Godfrey Ellis.

**OPINION**

**BACKGROUND**

Claude R. Ellis ("Husband") and Melisa Jane Godfrey Ellis ("Wife") married in 1996. During the parties' marriage, Husband was a successful businessman and Wife was a homemaker. In June 2011, Husband sued Wife for divorce. Since then, this matter has been before us three times. In the first appeal—an interlocutory appeal filed by Husband— we affirmed the trial court's invalidation of the parties' prenuptial agreement, holding that Husband did not fully disclose his assets to Wife before executing the agreement. *Ellis v. Ellis*, No. E2013-02408-COA-R9-CV, 2014 WL 6662466, at *7, 11 (Tenn. Ct. App. Nov. 25, 2014) (hereinafter, "*Ellis I*"). Because Husband has successful businesses and substantial separate assets, the invalidation of the prenuptial agreement significantly

changed the value of the marital estate. The parties engaged in protracted litigation until trial in 2019, which resulted in the second appeal of this matter. *See Ellis v. Ellis*, No. E2020-00869-COA-R3-CV, 2022 WL 3724768, at *1 (Tenn. Ct. App. Aug. 29, 2022) (hereinafter, "*Ellis II*"). As explained in *Ellis II*,

> Following remand from the first appeal, Wife's first counsel, Martha Meares and Paul R. Dillard, filed a motion to withdraw, which was granted. Meares and Dillard then filed a notice of attorney's charging lien against Wife's property in the amount of $368,259.95 for unpaid attorney's fees and expenses. Wife's new counsel filed an objection to the attorney's charging lien, requesting "a hearing to determine the reasonableness of the unpaid legal fees and expenses." This issue was reserved until after the conclusion of trial.
>
> The divorce trial took place on February 19-21, 2019. The trial court heard the testimony of the parties, two of Husband's business associates, and Husband's accountant. Husband was a successful businessman, so there were numerous assets in contention that the trial court was required to classify and divide, which it did in detail in an extensive order and chart captioned "Master Asset List."

*Ellis II*, 2022 WL 3724768, at *1.

The main assets in dispute were Husband's businesses and real property. Wedgecorp is a Tennessee corporation dealing in real estate development. Husband started Wedgecorp before the marriage, and his interest in it is undisputedly a separate asset. Wedgecorp also owns 51% of another business, Quality Machining Service, LLC ("QMS"), which Husband started during the marriage. The other 49% of QMS is owned by David Triplett ("Mr. Triplett"), Husband's business partner. The real property at issue, which is located on Blythe Ferry Road in Cleveland, Tennessee (the "BFR Property"), is where QMS operates.

The trial court ultimately found that Husband dissipated marital assets. In addition, the trial court classified and divided the marital estate; awarded Wife alimony in futuro of $3,600.00 per month; and awarded Wife attorney's fees as alimony in solido. In *Ellis II*, we affirmed among other things the trial court's findings with respect to Husband's dissipation of marital assets and the award of alimony in futuro to Wife. 2022 WL 3724768, at *14, 17. On the other hand, we vacated the trial court's findings that Husband's interests in QMS and the BFR Property were marital assets subject to division. *Id*. at *8–9. Regarding QMS, we explained as follows:

> QMS is a corporate entity separate from Wedgecorp. It is not owned by Husband and consequently cannot be classified as marital property. To consider QMS as merely an increase in the value of Wedgecorp would be to

improperly disregard the corporate forms of these entities. Wife did not argue at the trial level that the corporate veil of either Wedgecorp or QMS should be pierced on equitable grounds.

*Id*. at \*8. Accordingly, we reversed the trial court's finding that QMS was a marital asset. It was owned by Wedgecorp and Mr. Triplett, not Husband. Regarding the BFR Property, the trial court found that Husband held a 50% ownership interest as a tenant in common with Mr. Triplett. We also reversed this finding:

> Husband testified that his brother transferred 1455 Blythe Ferry to him "in probably" 1995, before the marriage in 1996. On January 14, 2005, both Husband and Wife signed a quitclaim deed transferring an undivided one-half interest in the property to Husband and David Triplett as tenants in common. Mr. Triplett testified that 1455 Blythe Ferry is owned by him and Husband, and the title reflects this ownership. Because the trial court's classification of the real property at 1455 Blythe Ferry is based on the misconception that it was owned by Wedgecorp or QMS, we vacate the court's ruling in this regard for reconsideration of the proper disposition of this asset.

*Id*. at \*9.

Because the classification of major assets changed following *Ellis II*, this case was remanded to the trial court for a re-division of the marital estate. Because the property division affected Husband's ability to pay alimony, as well as Wife's need, we noted that the trial court could reconsider its award of alimony in solido to Wife. *Id*. at \*17. We also instructed the trial court to consider the effect of the quitclaim deed found in the record in which Husband and Wife conveyed their interest in the BFR Property to Husband and Mr. Triplett as tenants in common. We instructed the trial court to "consider and address the effect of the quitclaim deed on the classification of" the BFR Property, as well as the effect on the overall division of property. *Id*. at \*9. While *Ellis II* was pending, the parties engaged in a post-trial discovery dispute. Wife incurred additional attorney's fees that were placed at issue on remand.

The parties agreed not to put on new proof at the hearing on remand, which the trial court held on April 11, 2024. On May 3, 2024, the trial court entered its second order dividing the marital estate. As to the BFR Property, the trial court found that Husband's interest is a marital asset subject to division. Regarding the quitclaim deed in which Wife purportedly signed away her interest in the BFR Property, the trial court found, in relevant part:

> While Husband testified his brother transferred 1455 Blythe Ferry Road to him "in probably 1995" the Court did not credit that testimony. Husband did not produce a deed to that property, except a quitclaim deed where both Wife

and Husband signed transferring an undivided 1/2 interest in the property to Husband and Triplett. . . .While the law under *Davis v. Davis*, 223 SW3d 233, 238 (Tenn. Ct. App. 2006) appears to say that a conveyance of property from one spouse to another creates the rebuttable presumption of a gift, there is other law that indicates a quitclaim deed does not prove a gift. *See Abney v. Abney*, No 181, 1991 WL 16255 @3 (Tenn. Ct. App. Feb. 12, 1991). In *Abney* the Court found the deed did not have the effect of conveying property to wife as her separate property. It is clear in this case, from the transcript[], Wife did not understand the quitclaim deed. As Wife stated, Husband told her that David Triplett did not have any "borrowing power" and the burden was on him and if she wanted to help the company grow, David Triplett needed more borrowing power. So, Husband said "Lisa, you need to sign this on the property, so we can grow this company. And David Triplett is going to give it back to you." Continuing, Wife testified that Husband said "—this is just for a short period so we can grow the company and David Triplett can have some of the burden of borrowing the money". Wife complied and did what Husband told her to do. She further testified she signed the quitclaim deed because Husband told her she should and he was very upset. She testified she felt forced to sign it, but was assured David Triplett would give it back to them after a short period of time. She trusted her husband. It is clear she received nothing for signing this document. She did not understand what she was signing. The Court credits her testimony on this issue. . . . Husband points to no testimony suggesting Wife intended to give her presumptive marital interest in the 1455 Blythe Ferry Road to Husband. Husband did not testify that he received a gift from Wife of this property. After review of *Altman v. Altman*, 181 SW3d 676 (Tenn. Ct. App. 2005) and *Davis v. Davis*, 223 SW3d 223 (Tenn. Ct. App. 2006), the Court finds Wife did not intend to gift her marital interest in this property to both Husband and Mr. Triplett, but was coerced into signing a deed which she did not understand and under the belief it would be transferred back.

Regarding QMS, the trial court acknowledged this Court's holding in *Ellis II* that it is owned by Wedgecorp, not Husband, and thus found that QMS is not subject to equitable division. By the same token, the trial court noted that any debt associated with QMS is non-marital. This separate debt includes a large loan taken out by Husband and Mr. Triplett, which is referred to by the parties as the "Campus Loan." *See Ellis II*, 2022 WL 3724768, at *1. The trial court classified $718,561.63 of the Campus Loan as non-marital debt.[1]

The trial court determined that the marital estate totaled $2,605,442.61, a figure including $921,805.00 in assets dissipated by Husband. Using this figure, the trial court

---

[1] There is a 19-cent discrepancy between this figure and the figure of $718,561.44 reached in the first marital division. Both parties state on appeal that the 19-cent difference is immaterial.

awarded Husband $2,537,867.61 in "marital value" and Wife $67,575.00 to be paid outright. The trial court also ordered Husband to pay Wife $1,235,146.31 as part of the division, resulting in an essentially 50/50 split of the marital estate.

The final issue for the trial court to consider on remand was the award of attorney's fees to Wife, which totaled $389,344.95. We vacated this award in *Ellis II* in light of the issues with the property division but noted that "[t]he trial court has already twice heard and ruled on the propriety and reasonableness of the attorney's fees . . . so it is certainly not *required* to reconsider these issues on remand. However . . . the trial court may reconsider as it deems necessary." 2022 WL 3724768, at *11. The trial court did not deem it necessary to revisit the reasonableness of Wife's attorney's fees and affirmed its prior award. In so doing, the trial court noted that it was primarily Husband's fault that the case had gone on so long.

On May 31, 2024, Wife filed a motion titled "Renewal of Motion for Award of Post-Appeal Fees and Resolution of Miscellaneous Issues." Wife asked the trial court to award her attorney's fees incurred after the notice of appeal for *Ellis II* was filed. Husband filed a response in opposition to this motion, arguing, inter alia, that Wife had no need for additional attorney's fees considering the division of marital property. Husband asserted that much of the post-appeal fees incurred by Wife were incurred in Wife's attempt to collect on a judgment that was ultimately vacated.

The trial court entered an order on October 21, 2024, finding that the original alimony in solido award for the pre-appeal fees was reasonable and that Wife is entitled to another $49,964.00 in fees accrued post-*Ellis II*. Husband filed a notice of appeal to this Court on November 19, 2024. On January 30, 2025, the trial court entered an order clarifying that Wife is also entitled to $3,735.00 in attorney's fees stemming from a motion to compel that the trial court granted in 2021.

## ISSUES

Husband raises six issues on appeal, which we restate as follows:

1. Whether the trial court erred by not classifying the parties' share of the Campus Loan as marital debt and including it in the division of the marital estate, and whether the resulting division of the marital estate was inequitable.

2. Whether the trial court erred by classifying Husband's interest in the BFR Property as marital property instead of Husband's separate property.

3. Whether the trial court abused its discretion by re-awarding Wife the full amount of her attorney's fees incurred prior to the first appeal when the size of the marital estate and the amount awarded to Wife had significantly decreased.

4. Whether the trial court erred in awarding Wife as alimony in solido her attorney's fees incurred after the notice of appeal was filed for *Ellis II*.

5. Whether the trial court erred in awarding Wife attorney's fees and expenses as a discovery sanction when the discovery sought was post-judgment discovery related to a judgment that was ultimately vacated by this Court.

6. Whether the trial court erred by permitting Wife's former attorneys, the law firm of Meares & Dillard, to participate in the proceedings on remand, and whether the order submitted by Meares & Dillard and entered by the trial court on October 21, 2024 is void.

Wife responds to the issues raised by Husband on appeal but raises no additional issues in her posture as appellee. Although not formally raised as an issue, Wife requests her appellate attorney's fees at the conclusion of her brief. In addition, the law firm of Meares & Dillard filed a motion in this Court for permission to intervene.

## STANDARD OF REVIEW

Because this is an appeal from a bench trial, we review the trial court's factual findings de novo, presuming their correctness unless the evidence preponderates otherwise. *See Boote v. Shivers*, 198 S.W.3d 732, 740 (Tenn. Ct. App. 2005); Tenn. R. App. P. 13(d). "[F]or the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Boote*, 198 S.W.3d at 741. The presumption of correctness does not apply to the trial court's conclusions of law. *Id.* We ascribe great weight to the trial court's credibility determinations and will not re-evaluate those determinations absent clear and convincing evidence. *Id.* at 740 (citing *Est. of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997)); *see also Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). To meet the clear and convincing standard, the evidence must eliminate "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

Several of the issues on appeal implicate the trial court's discretion. The abuse of discretion standard of review "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives." *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Accordingly, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). "Indeed, when reviewing a discretionary decision by the trial court, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)). This presumption

notwithstanding, "[a] trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaching an illogical decision, or by resolving the case 'on a clearly erroneous assessment of the evidence.'" *Id*. (quoting *Lee Med.*, 312 S.W.3d at 524).

**DISCUSSION**

## I. Classification of the Campus Loan

Husband first addresses the trial court's ruling that the Campus Loan is a $718,561.63 debt owed by QMS. Husband contends that the proof in the record preponderates against this finding because the accounting for QMS does not show that QMS owes the full balance of the loan, which the trial court found to be approximately $1.4 million. Rather, the QMS accounting shows the business's debts as being much lower than the balance of the Campus Loan. Therefore, according to Husband, the loan cannot be attributed to QMS. Husband cites the Fair Market Value Analysis performed by Pugh CPAs in November 2017, which does not appear to include the Campus Loan, as well as the Single Ledger Balance Report from the loan closing, which showed that "Excess Cash to Close" went to Husband and Mr. Triplett rather than QMS. Relatedly, Husband and Mr. Triplett were issued checks in October 2016. Additionally, Husband asserts that the loan was taken out during the parties' marriage and therefore is presumptive marital property. Husband also states that the fact that QMS pays on the loan is not dispositive. Husband says in his brief that "failure to include the Campus Loan indebtedness in its division of the marital estate resulted in the distribution being manifestly inequitable," resulting in Wife effectively receiving 69% of the marital estate rather than the 50% originally intended by the trial court.[2]

"Trial courts are vested with a great deal of discretion when classifying and dividing the marital estate, and their decisions are entitled to great weight on appeal." *Eldridge v. Eldridge*, 137 S.W.3d 1, 12 (Tenn. Ct. App. 2002) (hereinafter, "*Eldridge II*"). As such, this Court will not interfere "unless the [trial] court's decision is contrary to the preponderance of the evidence or is based on an error of law[.]" *Id*. "Property classification is a question of fact." *Luplow v. Luplow*, 450 S.W.3d 105, 109 (Tenn. Ct. App. 2014).

As a "dual property" state, Tennessee distinguishes between separate property and marital property. *Eldridge II*, 137 S.W.3d at 12 (citing *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988)). In a divorce action, only marital property is subject to division between the parties. *Id*. at 12–13 (citing Tenn. Code Ann. § 36-4-121); *see also Keyt v. Keyt*, 244 S.W.3d 321, 328 (Tenn. 2007) ("[C]ourts do not have the authority to make an equitable distribution of separate property[.]" (citing *Cutsinger v. Cutsinger*, 917 S.W.2d

---

[2] Husband states that his share of the marital estate, $1,302,721.30, is reduced to $584,159.86 to account for the Campus Loan debt, while Wife still receives her share of $1,302,721.31.

238, 241 (Tenn. Ct. App. 1995))). It is therefore "of primary importance for the trial court to classify property as separate or marital" before it can equitably divide the property between the parties. *Eldridge II*, 137 S.W.3d at 12–13 (citing *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996)). Notably, "Section 36-4-121(a)(1) requires an *equitable* division of marital property, not an *equal* division." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010) (emphasis in original). Generally, assets acquired prior to marriage are presumed separate, and assets acquired during the marriage are presumed marital. *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007). In turn, it is well-established that "'marital debts' are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing." *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003).

Insofar as Husband's arguments depend upon his testimony and explanations, we note that the trial court found Husband non-credible. The trial court's credibility determinations, both implicit and explicit, are entitled to strong deference on appeal. *See Kautz v. Berberich*, No. E2019-00796-COA-R3-CV, 2021 WL 1034987, at *7 (Tenn. Ct. App. Mar. 18, 2021). When addressing the issue of alimony in futuro in *Ellis II*, we affirmed the trial court's findings regarding Husband's concealment of the true state of his finances. 2022 WL 3724768, at *17. We observed that "Husband's efforts to obfuscate his finances by creative accounting, and a simple lack of candor and honesty, have rendered it impossible to say with certainty what his income is." *Id*. Clearly, the trial court did not assess Husband to be credible in his testimony concerning his financial affairs. We discern no clear and convincing evidence in this record to overturn the trial court's negative assessment of Husband's credibility.

While Husband points to the QMS accounting as evidence that the Campus Loan is marital debt, the accounting is not dispositive. The Pugh CPAs report states that "[w]e have not audited, reviewed, or compiled the financial statements . . . and we express no assurance on them." Thus, Pugh depended on information provided to it. Moreover, the sources for the Pugh report are from prior to December 2016 when the Campus Loan was acquired. Additionally, QMS pays on the loan debt. These facts undercut Husband's reliance on the documentation. In any case, the trial court was not obliged to take the accounting or loan documents at face value. As we noted in *Ellis II*, "[t]he trial court found that Husband engaged in a pattern of mingling business and personal assets and debts, pulling out excess cash from various property transactions, and hiding assets in an attempt to keep them from Wife after the divorce was filed." 2022 WL 3724768, at *13. Beyond the documents, it was proper for the trial court to consider the circumstances of the Campus Loan debt—including how it was incurred and for what purpose—in determining its proper classification in this divorce case.

In *Ellis II*, we vacated the classification of QMS as marital property in part based on our recognition of corporate identity. *Id*. at *8 ("To consider QMS as merely an increase in the value of Wedgecorp would be to improperly disregard the corporate forms of these entities."). We also noted that some of the QMS property was encumbered by debt and

vacated the finding that the debt of QMS was marital. *Id*. at n.4. Based on this record, the $718,561.63 debt is not marital; rather, it was incurred for the benefit of QMS and is paid on by QMS. As found by the trial court, the debt belongs to "QMS and/or Wedgecorp and Mr. Triplett." The evidence does not preponderate against the trial court's classification of $718,561.63 of the Campus Loan as non-marital debt. We affirm the trial court on this issue.

## II. Classification of the BFR Property

Next, Husband challenges the trial court's classification of the BFR Property. Husband asserts that because this Court vacated the trial court's original classification of the BFR Property as marital property based on the trial court's consideration of the 2005 quitclaim deed, the trial court erred by once again classifying the BFR Property as marital property. Husband states that whatever interest Wife had in the property was gifted away in 2005. Husband states further that the trial court improperly shifted the burden to him to show that the BFR Property was not his separate property. Husband argues that the cases relied on by the trial court in its order, *Davis* and *Altman*, are distinguishable from the case at bar. While the trial court found that Wife was coerced into deeding away her interest in the BFR Property, Husband cites the Tennessee Supreme Court for the proposition that the deed speaks for itself and that, "[i]n general, the parol evidence rule provides that 'a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing.'" *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694–95 (Tenn. 2019) (quoting Black's Law Dictionary 1292 (10th ed. 2014)).

In addition, Husband cites *Strode v. Strode*, a case in which a wife divested herself of any interest in commercial property that was quitclaimed to her husband and his sister by her husband's parents during the parties' marriage. No. M2007-00265-COA-R3-CV, 2008 WL 2229505 (Tenn. Ct. App. May 29, 2008) at *1–2. In that case, this Court noted that the wife had "signed the Assumption and Modification of Note and Deed of Trust Agreement specifically to divest herself of any marital rights in the property and to make clear that she had no obligation on the promissory note." *Id*. at *2. The *Strode* court concluded that "[t]he language of the deed and the circumstances surrounding the transfer provide support for the trial court's classification of the Bailey Collins property as separate property," and the evidence did not preponderate against the trial court's classification. *Id*.

Based on the foregoing, Husband argues that the trial court should have excluded the BFR Property from the estate and classified it as Husband's separate property. Husband offers his own proposed division that this Court should adopt under which the value of the marital estate is $1,239,181.17. After accounting for marital debt and dissipation, and a proposed judgment of $552,015.59 to Wife, Husband suggests that this amount should be split equally between the parties so that Husband and Wife receive $619,590.58 and $619,590.59 respectively.

Regarding spousal gifts, this Court has stated as follows:

> The burden of proving a gift is normally on the donee. *Pamplin v. Satterfield*, 196 Tenn. 297, 265 S.W.2d 886, 888 (Tenn. 1954). However, a conveyance of property from one spouse to another creates the rebuttable presumption of a gift. *Denton v. Denton*, 33 S.W.3d 229, 232 (Tenn. Ct. App. 2000); *Turner v. Turner*, No. M1999-00482-COA-R3-CV, 2000 WL 1425285, at *7 (Tenn. Ct. App. Sept. 28, 2000). In Tennessee, two elements must be present for a court to find that a valid gift has been made: (1) an intention by the donor to make a present gift; and (2) delivery of the gift, relinquishing the donor's control and dominion over the property. *Lowry v. Lowry*, 541 S.W.2d 128, 130 (Tenn. 1976); *Dunlap v. Dunlap*, 996 S.W.2d 803, 815 (Tenn. Ct. App. 1998).

*Davis v. Davis*, 223 S.W.3d 233, 238 (Tenn. Ct. App. 2006). Ultimately, however, "the classification of property does not depend on the state of its record title but on the conduct of the parties." *Altman v. Altman*, 181 S.W.3d 676, 680–81 (Tenn. Ct. App. 2005).

Although in *Ellis II* we vacated the trial court's finding that the BFR Property was marital and remanded for the trial court to reconsider in light of the 2005 quitclaim deed, we did not preclude the possibility that the trial court would once again classify the BFR Property as a marital asset. 2022 WL 3724768, at *9. The history regarding how Husband and/or his businesses acquired the BFR Property is murky. Although Husband stated at trial that his brother transferred the BFR Property to him in 1995 before his marriage to Wife, he never offered a deed to support this, and the trial court did not find him credible. However, the record does contain the 2005 quitclaim deed in which Husband and Wife transferred what interest they had in the BFR Property to Husband and Mr. Triplett as tenants in common. The evidence therefore reflects that Husband acquired the BFR Property in 2005, and it is presumptively marital property.

Apart from the dispute over when the BFR Property was acquired, Husband argues that Wife gifted away by quitclaim deed whatever interest she may have once had in it. Husband relies on Tennessee authorities providing that a conveyance from spouse to spouse creates the rebuttable presumption of a gift. Nevertheless, a rebuttable presumption is just that—a presumption that can be overcome. Otherwise, Tennessee law would simply stand for the proposition that a conveyance from spouse to spouse is always a gift no matter the circumstances. We discern no improper shifting of the burden on this issue to Husband; the trial court made appropriate factual findings relevant to whether the rebuttable presumption of a gift was overcome. The trial court found that Wife was coerced into signing the deed and did not understand the meaning of the transaction. Specifically, as found by the trial court, Wife was led to believe that her interest in the BFR Property would be restored to her at a later date. The trial court clearly credited Wife's version of events. The evidence does not preponderate against the trial court's factual findings, nor does clear and convincing evidence exist to overturn the trial court's credibility determinations.

Wife's conveyance to Husband of her interest in the BFR Property lacked the requisite donative intent for a gift. Thus, the presumption that Wife's conveyance to Husband was a gift was successfully rebutted. We affirm the trial court's classification of the BFR Property as marital property.

In view of our affirmance of the trial court on Husband's issues concerning classification, there is no basis to modify the trial court's division of the marital estate. Husband states in his brief that the resulting division of the marital estate is a departure from the trial court's original division that led to an effective 50/50 split between him and Wife. However, there is no requirement that the division of a marital estate be 50/50 to be equitable. The fact of a non-equal split is not, on its own, grounds for tinkering with the trial court's division of the marital estate. We discern no abuse of discretion nor any reversible error in the trial court's classification and division of the marital estate. Thus, we affirm the trial court's division of the marital estate.

### III. Attorney's fees to Wife incurred prior to the first appeal

Husband next addresses the trial court's rulings as to attorney's fees. First, Husband asserts that the trial court erred by re-affirming its previous ruling awarding Wife $389,344.95 in fees as alimony in solido. According to Husband, the marital estate as currently calculated is much less than the trial court valued it when including the Campus Loan as a marital debt; thus, this attorney's fees award is not proportional to his ability to pay. Further, Husband argues that Wife is receiving a large sum of the marital estate and has no need for this amount of alimony.

Concerning the award of attorney's fees as alimony in solido in divorce cases, our Supreme Court has stated as follows:

> It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. *See* Tenn. Code Ann. § 36-5-121(h)(1) ("alimony in solido may include attorney fees, where appropriate"); *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996). The decision whether to award attorney's fees is within the sound discretion of the trial court. *Crabtree*[ *v. Crabtree*], 16 S.W.3d [356,] 361 [(Tenn. 2000)]; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. *Umstot v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997). Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, *see Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992), or the spouse would be required to deplete his or her resources in order to pay them, *see Harwell*

*v. Harwell*, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony. *See id.* at 185.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011). When considering whether an award of attorney's fees is reasonable, courts must consider the factors set forth in Tennessee Supreme Court Rule 8, RPC 1.5(a), including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

While Husband emphasizes the factor concerning the amount involved and results obtained, there are nine other factors to consider. In a May 2020 order, the trial court analyzed the reasonableness of Wife's attorney's fees, finding in part that

> Defendant's attorney postponed her fees in an effort to continue to represent a client who had no separate assets and whose husband said, after many years of marriage, wife was entitled to only one-half interest in a motorhome. Ms. Meares did good work on behalf of her client and while at first blush the Court might find $360,000 in requested attorney fees to be unreasonable, the Court has considered the time devoted to the legal services in this case. The number of years this case has been pending, the novelty and difficulty of the questions involved, the skill performed by the service, the conduct of the Plaintiff, and the hourly rate in this case are not contested. The Court has considered the other factors in *Connors v. Connors*, 594 SW2d 672 including the results obtained, the experience, reputation and ability of the lawyer representing Defendant all appear to be reasonable.

The trial court later re-affirmed its findings. In an October 2024 order, the trial court stated that "[t]he fact the size of the marital estate diminished, and the size of Husband's

separate property increased after remand from the Court of Appeals does not change the other facts previously found by this Court." The evidence does not preponderate against the trial court's findings. While $389,344.95 is, standing alone, a very large award of attorney's fees, we note the length of this case, as well as the major effort Wife had to undergo to secure her share of property and support. We note further the disparity in financial status between Husband and Wife, with Wife having a great need for the award of fees and Husband the ability to pay. We discern no abuse of discretion in the trial court's award to Wife of $389,344.95 in pre-appeal attorney's fees.

## IV. Attorney's fees to Wife incurred after the notice of appeal was filed for *Ellis II*

Husband makes similar arguments as to the additional $49,964.00 in post-appeal fees incurred by Wife. Husband asserts that these fees should not be paid by him because they were incurred by Wife trying to collect on a judgment that was ultimately vacated. Husband says further that Wife has no need for these additional fees in light of the share of the marital estate she will receive. Husband also argues that, insofar as Wife was awarded attorney's fees for trying to execute on the marital property division judgment, the award of fees lacked any legal basis.[3] According to Husband, these fees were incurred after the final hearing and not in connection with a Tennessee Rule of Civil Procedure 59 motion and thus cannot serve as the basis for an award to Wife of alimony in solido. *See* Tenn. Code Ann. § 36-5-121. The American Rule provides that "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005)).

Regarding Wife's attorney's fees incurred trying to execute on the judgment, we observe that the final hearing in this matter took place on September 23, 2024. The contested post-appeal attorney's fees were incurred prior to this hearing. At the time of the hearing, we had issued our Opinion in *Ellis II* on August 29, 2022, and remanded the case to the trial court for further proceedings. Thus, the premise of Husband's argument about the timeline and the legal basis for these attorney's fees is incorrect. We conclude that the trial court properly categorized the award to Wife of attorney's fees incurred seeking to execute on the judgment as alimony in solido. As to Husband's argument that Wife should not have been awarded attorney's fees for attempting to collect on a judgment that was vacated, we note that the judgment was only partially vacated. Apart from certain specific aspects of the trial court's judgment, we otherwise affirmed the trial court in *Ellis II*.

---

[3] Husband identifies three categories of attorney's fees totaling $3,244.50, $2,643.50, and $1,356.00, respectively, corresponding to attorney's fees Wife incurred seeking to garnish the judgment; attorney's fees incurred on post-judgment discovery toward executing on the judgment; and attorney's fees incurred on a motion to compel regarding post-judgment discovery toward executing on the judgment.

In awarding Wife her post-appeal attorney's fees, the trial court found that "[a]ll factors continue to weigh in favor of Wife. Wife has a great need for these fees and Husband has the ability to pay." The evidence does not preponderate against the trial court's findings on this or any other issue. Wife should not have to deplete her resources to pay these fees. We discern no abuse of discretion in the trial court's award to Wife of $49,964.00 in post-appeal attorney's fees.

## V. Attorney's fees and expenses to Wife incurred as a discovery sanction

With respect to the $3,735.00 in attorney's fees and expenses awarded by the trial court, Husband points out that these stem from a motion to compel argued in 2021. During the pendency of the first appeal, Wife brought a motion to compel against Husband for noncompliance with post-judgment discovery.[4] The trial court sanctioned Husband by awarding Wife her attorney's fees and expenses incurred in connection with the motion but did not set an amount. Trial courts have broad discretion over when and how to impose discovery sanctions. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004). Husband acknowledges that the trial court imposed these discovery sanctions prior to our partially vacating the underlying judgment, but he points out that the trial court did not finalize the sanctions until afterward. Husband asserts that the trial court abused its discretion. Wife, in turn, asserts that Husband failed to stay execution and that she had the right to pursue execution on the judgment.

First, we reiterate that in *Ellis II*, we vacated the trial court's judgment only in part. Other than certain specific aspects of the trial court's judgment, we broadly affirmed the trial court. Second, Husband does not dispute on appeal that he was noncompliant with post-judgment discovery. Instead, he disputes only the propriety of the sanction. However, it was within the trial court's discretion to sanction Husband for his noncompliance with discovery. On a discretionary decision such as this, we do not second-guess or substitute our judgment for that of the trial court. We discern no abuse of discretion in the trial court's grant to Wife of $3,735.00 in attorney's fees and expenses as a discovery sanction.

## VI. The attempted participation by Meares & Dillard

Husband contends that the trial court erred by permitting Wife's former attorneys of the law firm Meares & Dillard to participate in the case and defend Wife's attorney's fees award. Because the attorneys never formally intervened, Husband argues that Meares & Dillard is not properly before the Court and should not be allowed to participate in the

---

[4] In a September 2021 order, the trial court ordered Husband to

answer under oath all of Defendant's Post-Judgment Discovery Requests specifically, fully, and completely, and include an explanation regarding why his original interrogatory answer regarding his 2020 income differed from the income reported on his 2020 tax return [and that Husband] pay the reasonable expenses, including attorney's fees, caused by his failure to respond to Defendant's discovery requests[.]

proceedings. Husband also argues that an order entered by the trial court on October 21, 2024 is void because it was submitted by non-party Meares & Dillard. Wife agrees with Husband that Meares & Dillard was never made a party to this matter and should not have been allowed to participate in any proceedings; however, Wife asserts that any error in this regard is harmless. Meares & Dillard filed a motion in this Court for permission to intervene.

"Generally, an applicant for intervention must show proper diligence, and the right to intervene may be lost by unreasonable delay or laches after knowledge of the suit." *Am. Materials Techs., LLC v. City of Chattanooga*, 42 S.W.3d 914, 916 (Tenn. Ct. App. 2000). Under Tennessee Rule of Civil Procedure 24, one requirement for a motion for permissive intervention is that it be timely. Meares & Dillard filed a motion to intervene in this Court on December 18, 2025. This case has been active since 2011 and is on appeal for the third time. Meares & Dillard's motion to intervene is not timely; furthermore, the law firm's intervention is unnecessary for the defense of its interests. We therefore deny Meares & Dillard's motion to intervene. We also decline Husband's request that we declare the trial court's October 21, 2024 order submitted by Meares & Dillard void.[5] The participation of Meares & Dillard ultimately had no discernable impact on the trial court's judgment, and any error committed by the trial court in allowing Meares & Dillard to participate was harmless.

## VII. Wife's request for attorney's fees incurred on appeal

Finally, Wife asks to be awarded her appellate attorney's fees. This decision is soundly within the discretion of this Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). "When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case." *Chaffin v. Ellis*, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006) (quoting *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)). Under all the circumstances of this long-running case, we hold each party responsible for their own attorney's fees on appeal.

---

[5] Two orders were entered by the trial court concerning Wife's prior attorney's fees. One of these orders was submitted by Meares & Dillard. The other order granted Wife her attorney's fees for Meares & Dillard but was not submitted by Meares & Dillard.

**CONCLUSION**

The judgment of the Chancery Court for Bradley County is hereby affirmed. Costs on appeal are assessed to the appellant, Claude R. Ellis, for which execution may issue if necessary.

 

_____

KRISTI M. DAVIS, JUDGE